The next case this morning is number 5-20-0074, People v. Prante. Arguing for the appellant John Prante is Joshua Tepfer. Arguing for the appellate, People of the State of Illinois, is Julia Wykoff. Each side will have up to ten minutes for their argument. The appellant will also have five minutes for rebuttal. You'll see the digital timekeeping device on my screen. When time has expired, I'll hit the gavel. Please remember only the clerk is permitted to record these proceedings today. Okay, Mr. Tepfer, are you representing the defendant? I am, Your Honor. Good morning. Good morning. You may proceed when you're ready. Thank you, Your Honor. May it please the court, counsel, I'm going to be focusing my argument on the denial of leave to file petitioners' actual innocence and due process claims. The factual underpinnings for these issues are similar. They revolve overwhelmingly around the radical sea change in the forensic science community as it relates to bite mark evidence from 1984's trial to today. While there are nuances, the legal analysis for materiality and prejudice, so I will discuss both those issues together. But I do remind this court that recently, just last year, in People v. Robinson, the Illinois Supreme Court addressed the standard of actual innocence at the leave to file stage, reiterating that it is a pleading standard with a low threshold. And briefly, before I get into the legal issues, the factual record is long, but for this appeal, it's really not complicated. Carla Brown was submerged in a barrel of water. No one ever saw a bite mark. In 1980, from a black and white photograph, a forensic odontologist named Homer Campbell identified a supposed bite mark on her skin in the shoulder area. Because no one ever saw the supposed bite mark, the photo was not taken of the injury directly. Two years later, forensic odontologist Lowell Levine also said it was a media campaign that was initiated where the prosecutor let the local community know about the bite mark and that it would solve the crime. And they let the community know there was a suspect, and at the same time, my client, John Pronte, his teeth were taken, and it was known in that community that he was the suspect. At the trial, Drs. Levine and Campbell testify that the bite mark is associated with John Pronte, and the prosecution calls the bite marks vital in opening and tells the jury in closing that you can convict, quote, on the bite marks alone. In short, bite marks permeated every aspect of this prosecution. There is no arrest of John Pronte without the bite mark, and the bite mark is the link that makes the witness testimony relevant. And with that factual context, as you consider leave the file issues in this case, given the procedural posture, your factual starting point for this analysis should be as follows. A jury never hears a single piece of evidence about a bite mark, period. It's as if it doesn't exist. That's the factual predicate. And why? Because at this stage of the proceedings, your analysis is de novo, and it requires you to take all well-pled allegations as true. And Peabody Robinson explains that well-pled allegations should be taken as true unless no trier of fact could ever accept the evidence. The scientific community would not support a scientific conclusion that the injury on Carla Brown's shoulder is a bite mark. At the time of trial, the identification of bite marks was seen as a reliable science. That is not true today. It would not come into evidence. And what supports this conclusion? Well, first, a series of reports beginning in 2009. That's the National Academy of Science reports, which was a leading panel of scientists from the top of their fields that dealt with all forensic evidence. That was followed up in 2016 by the present counsel's report, which was a panel of scientists and legal experts and statisticians, which again dealt with all forensics. And at the same time, there was this Texas Forensic Science Commission, which was seven scientists and two lawyers that focused just on bite marks, all in 2016. And together, the conclusions of those reports are clear. There's no scientific support for associating a particular injury with dentition. The overwhelming majority of existing research these reports find do not support the contention that bite mark comparison can be performed reliably and accurately from examiner to examiner. The second thing that supports our conclusion is that the nearly three dozen of wrongful arrests and convictions undone by that revolved around bite mark analysis. And that includes six cases from the very same forensic odontologist that testified in this case. Dr. Levine and Campbell just have a history of getting this wrong. And the third and perhaps most important factual predicate for why we pled this is the affidavits of Dr. Ian Preddy. Who is Dr. Ian in the world on the study of bite marks. He wrote the foundational study in 2016 that concluded that dentists cannot even agree when an injury is a bite mark. They cannot agree on that threshold question. That's in his first affidavit. Now he did a second affidavit that we attached here. And the reason he did a second affidavit is he got access to the materials from this very case. And in that affidavit he reiterated the same conclusions about even in the best of circumstances scientists cannot agree on the threshold question of what a bite mark is. But as you might imagine when the evidence is poor it gets even worse. And he reviewed the evidence in this case and he found it is of the poorest lowest possible quality. Essentially the injury itself was on skin which distorts. It was submerged in water which distorts it even more. And the photos are useless because it wasn't taken. They didn't even notice the injury at the time. So there was no scale and it wasn't taken directly. He says the injury the quality of evidence here falls well below contemporary standards and it would not be scientifically or reliably supported today to conclude that these injuries were human bite marks. That's what well that's what's well pled and under Robinson a trier fact could certainly come to a conclusion that the injury on Carla Brown's skin does not meet the scientific basis to call it a bite mark. It does not meet rule 702 or the Frye standard under contemporary standards. Now I imagine. Let me ask you a question. You're arguing this case on the merits right now but procedurally what happened here is the trial court didn't allow a successive petition to be filed correct? Correct. So and I should clarify your I apologize. I am arguing that the factual predicate is that you should take it as true. We should get an opportunity to prove that up and leave the file should be granted because leave the file was not granted. That's why I'm arguing it in this position that that that you should consider this as the merits. Okay and I understand that but one of the issues here is whether or not your successive petitions. You can grant leave to we have we have agreed that this is should be considered a successive petition. This he has filed previous petitions and so this should be considered a successive petition but there is no actual limit to the number of successive petitions you can file. So if this is considered a second petition or a third petition the standard remains the same and in fact there have been cases that were granted leave to file an actual relief on the fourth or fifth petition that that does that's our position. Your client has filed several petitions already correct? He initiated a petition originally for for post-conviction DNA testing prior to even the DNA testing statute and then yet at the same time he had counsel and it filed an apprendee-like petition later as well correct? And he filed a 1401 petition as well? I believe I believe the 1401 was the one he raised under apprendee yes. Okay but at least he has filed petitions uh challenging the DNA analysis previously. Yes he has filed petitions but he has never had filed a petition until 2017 when this litigation started or this was filed in 2018 after some other forensic testing was granted that that he never had the opportunity to raise a contest uh contest the bite mark evidence because the reports the exonerations and all this material was not available to him. It is the exact the the sea change in the scientific community about bite marks that is the reason why he could not bring this earlier. Is there any counsel is there any Illinois case on point on bite marks? So that's there is no Illinois case that has actually addressed this bite mark science since all of these reports and exonerations have come to light. The state relies on I think it's a 1976 case that says you know what bite in evidence in Illinois. I believe that's the wrong analysis that you should apply. For example in Illinois there's a case people v Starks 365 Illinois app 3d 592 from the second district where bite mark was a crucial part of the conviction and DNA confirmed that he was innocent and that conviction was overturned. The correct answered question to ask is is there any state any jurisdiction in the country that has looked at these reports and determined you know what bite mark evidence is fine and you can we cite them on our case and there is not a single case and the state can't point to one where after looking at all these reports bite marks were determined to be fine. Look at Starks in northern district of Illinois from 2015 or EGV Eukins from the sixth circuit. Roden from Oregon in 2019. Conco in Pennsylvania in 2017. There's two in last few months. Sheila Denton from Georgia and Eddie Lee Howard who was actually exonerated yesterday and his conviction was vacated in December. Richards in California. All of these cases have looked at bite mark material and a bite mark all of the new science and determined we don't trust it. It cannot come in. It doesn't meet the standards for under Fry, Daubert whatever jurisdiction those apply. This Illinois has never looked at this issue. This would be the first one to look at it and we contend that you should follow every other jurisdiction that has looked at this and held that it is not scientifically plausible. I see my time is up. I don't know if I should continue or not. No you'll have some time after Miss Wyckoff has an opportunity. Thank you. Thank you very much. Thank you your honor. May it please the court and counsel. Your honors issues related to bite mark evidence has been at dispute since the time the back in 1984. This is obviously a long case with an extensive procedural and factual history. So I'm going to focus my time similar to Mr. Tepper just on this bite mark evidence issue. The defendant went to trial in his case. He had a three week long trial. The state presented three experts related to the bite mark evidence. They presented the testimony of Dr. Campbell, a chief consultant in forensic dentistry. Dr. Levine who is also an expert in forensic dentistry and Dr. Mullen who is the defendant's actual dentist in the Wood River, Illinois area. The defendant himself then presented his own experts to combat the state's expert testimony. The defendant presented the expert testimony of Dr. Orr who is a pediatric dentist and an expert in photography who testified that the photographs of the bite marks in this case were unreliable. This is the defendant's expert at the time of trial. Defendant also presented the expert testimony of Dr. Pavlik, an orthodontist who testified that the photography of the bite marks and the bite mark evidence itself was, and I quote, useless, that it was useless evidence. Defendant also presented expert testimony from Dr. Sperber who is a dentist and forensic orthodontist or odontologist who stated that the photographs were distorted and that they were unreliable and unusable for bite mark analysis in this case. So the state's position quite frankly is that the jury already heard the evidence that the defendant is putting forth today. The jury back in 1984 heard evidence from defendant's own expert witnesses that this evidence was useless or unreliable and that they shouldn't consider it. And that was defense counsel's strategy throughout the proceedings. He argued it extensively in closing argument that the bite mark evidence was not reliable and was useless in this case. Not only... There was never a hearing before trial though as under Frye as to whether this evidence should be admitted or not, correct? Correct. And I believe that's what defense counsel was getting at in his final argument related to the ineffective assistance of counsel. And this was also an issue on direct appeal where on direct appeal before this court in the fifth district, the defendant argued that there should have been some sort of pleading or defense counsel should have objected to say that this evidence about bite marks should not have come in. However, those are matters of trial strategy. This was clearly trial counsel's strategy throughout the proceedings was to attack the reliability of the state's expert witnesses and attack the reliability or the use of the bite mark evidence in this case. And that is sound trial strategy and strategy that defense counsel used throughout these proceedings, which also lends to my second point that the bite mark evidence not only was heard by the jury, it was then at dispute on direct appeal before this court back in 1986 is when this court considered issues about the bite mark evidence. Defendant has filed numerous pleadings between then and now related to bite marks and DNA evidence. He filed a motion to do more DNA testing, which was granted by the trial court. Additional DNA testing has been done in this case. There's been a slew of petitions and argument related to the bite mark evidence. So this evidence is not new or newly discovered evidence. This evidence has been at dispute since day one of this case, and the defendant's own experts testified that the evidence was unreliable, it was useless, that the jury should not consider it. And that's what defense counsel argued at the time of trial. What defendant is bringing to us today is no different than what the jury already heard back in 1982 or 1984 when he went to trial. The defendant in his brief cites to numerous cases outside the jurisdiction related to bite mark evidence. And as noted in the state's brief, those cases are distinguishable factually from the situation that we have going on today. And just to make it pretty plain and simple, bite mark evidence is currently admissible evidence in Illinois. It hasn't come up super frequently. There's not a ton of body of law in the state of Illinois about bite mark evidence. But as the law stands today in Illinois, it is admissible evidence based on this court's prior opinion in 1986. And also based on people versus Malone from 1976. This is admissible evidence. And that's it's good law where it stands. The defendant points to cases outside the jurisdiction to make the argument that this court should on the merits say that bite mark evidence is inadmissible in Illinois, I would ask this court not to do so. Defendant points to state versus Edmonds, which is a case out of Wisconsin, that is a shaken baby case. As this court is well aware, shaken baby science has developed, you know, over the course of the years. And state versus Edmonds out of Wisconsin, what we had was a situation where the state presented expert witnesses, and the defendant presented nothing to dispute the shaken baby evidence presented by the state. Essentially, what we had was the state putting on an onslaught of expert testimony, and the defendant kind of stepping back and saying, you know, I got nothing to respond with that. So in that situation, a Wisconsin court found that yes, the defendant deserved an opportunity to present his own expert witness testimony on shaken baby syndrome. That's not what we've got going on here. As I stated at the beginning of this argument, and as is outlined in my brief, the state presented three expert witnesses on forensic odontology, the defendant then presented his own three state or three expert witnesses, saying that that evidence is unreliable and useless. The photographs are bad. The pictures were taken after the body was exhumed. You should not consider this as persuasive evidence. Similarly, the defense counsel just talked about the Starks case out of federal court. That case was actually a federal civil lawsuit. It's not even a criminal proceeding. The court did make some statements in that case that bite mark evidence was unreliable. However, the crux of that case was whether the defendant could pursue a civil claim against the dentist that testified against him in his criminal case. And ultimately, in Starks, the federal court found that he could not that the dentist didn't testify in bad faith. They didn't present any kind of malicious evidence or even evidence that was incorrect or just blatantly wrong. The federal court there found that the defendant could not proceed or recover any kind of civil damages against the forensic odontologist who testified in that case. So that's just a wholly separate situation of what we've got going on here. Essentially, the defendant is asking this court to ignore all of the prior procedural pleadings that have been filed in this case, to ignore his own experts that testified at trial that the evidence was unreliable and useless by his defense counsel or by defendants' expert witnesses' own words. The bite mark evidence in this case was useless. That's what the jurors heard at the time of trial. And nothing that the defendant has presented today changes that. In fact, it's just kind of more of the same with perhaps some more updated resources since this case is, quite frankly, a pretty old case. Unless your honors have any more questions or want to discuss any of the other issues in this case, the state asks that... It seems that both of you concede that the only evidence against this defendant was the bite mark evidence. I mean, was there any evidence from the state's point of view other than the bite mark evidence? Yes, your honor. The state's position is that even if you take all the bite mark evidence out, there was still significant evidence that lended to defendant's guilt, that he was not prejudiced by the admission of the bite mark evidence. Now, of course, the bite mark evidence was a big deal. There was a lot of testimony. This was competing experts on the topic, but there was circumstantial evidence that defendant committed this crime. Within days of the murder, the defendant had told witnesses about specifics about the positioning of the victim's body. The victim's body was actually found in the basement, so it wouldn't have been viewable from outside the home. Defendant said that he was able to see through a door over the shoulder of police and see the exact positioning of the body. That would not have been possible given the location of the body and the crime scene, and he knew specifics about the actual position of the body, the way that her hands were bound, that she was in some sort of submerged container. He knew those things when those facts were not out to the public, and there was really no way that he would have known those things. He could not have seen it. He made many statements to people, to witnesses, about the position of the body. He stated that he had been at the victim's residence. Witnesses in the area saw him at the neighbor's house and potentially even talking to Carla Brown on the day of the murder. He made numerous statements that he was sexually interested in her, to friends. So, quite frankly, he had not only the opportunity to commit the crime, he had either been at the neighbor's, Paul Main's house, or even by some of his own accounts and the accounts of witnesses at her house on the day of the murder. Moreover, while this kind of blends in with the bite mark evidence, he did make comments to people that she had a bite mark on her body, and he had bitten Susan Lutz during the commission of a sexual encounter with her. So, there was other evidence that was blended to his guilt, in this case, outside of the bite mark evidence. As I see, I'm about out of time, unless there any other questions. The state asks that you affirm the trial court's dismissal, or the trial court's denial of motion for leave to file in this case. Thank you. Thank you. Mr. Tipper? Yes, Your Honor. Thank you. Your Honor, there's something entirely and fundamentally different between an argument to a jury that bite marks are unreliable versus them inadmissible at all. And think about what the state just said. They said, relying on a 1976 case in Malone, that bite mark evidence is still admissible. That means it's not ineffective assistance of counsel. That's not what we were getting at in our claim. That is a misstatement. He could not, trial counsel and Prontick could not raise this issue in 1984 when this trial because of Malone, because bite mark evidence was admissible at the time. Everything has changed in the last five, 10 years. 2016 is the key crucial point where all of these reports have come forth. And there is not a single case that the state was able to cite to you that says, you know what, bite mark evidence is still admissible. They talk, the Starks argument on the Northern District of Illinois. The point is, and Stark says this clearly in the Northern District of Illinois, it is a dubious proposition that bite mark evidence would meet the Dauber standard. That's what every case that I cited on the litany of cases. Don't worry about Edmonds, Audrey Edmonds. I'm shaking baby syndrome. Look at Denton, look at Kunkel, look at Chaney, look at Roden, look at Howard, look at Richards, over and look at Eag in the Sixth Circuit. Those cases over and over again, talk about the exact same type of evidence which Mr. Prontick could not raise until now, until when he raised it. It wasn't available to him. And look at the direct appeal decision in this case too. In fact, Mr. Prontick tried to argue on direct appeal that it was error to bet in this court to not admit, to admit the bite mark evidence at all. And this court said, we can't, we can't address that because it wasn't addressed below, because it couldn't have been addressed below. So this argument of inadmissibility has never been raised in this court. It never been and couldn't have been. And as far as the other evidence, that's the whole point. If there, if there was no bite mark, if the jury never heard a single thing about the bite mark, if the prosecution couldn't get up and say that there was a bite mark on his shoulder, because it's not scientifically appropriate, because, and that's what we fled. And that's what Dr. Ian Preddy says. If that's not there, the link between these witnesses, between Susan Lutz and testifying about a bite mark, it's irrelevant. It couldn't come in. It makes no sense. It's entirely severed. The witnesses' memories of Mr. Prontick talking about a bite mark, it's irrelevant. It's moot. It doesn't even come in. It has no role in the trial. It's entirely severed. The state is, this case, and ultimately the crucial thing out of all of it, in my opinion, is he's not arrested until they identify the bite mark, until they have these associations with the bite mark. And look at E, EGE in the Sixth Circuit. And that court said specifically, that is the crucial fact for materiality and prejudice. It was crucial to them that the fact that E himself or the defendant in that case was not arrested until the bite mark was identified. These ideas about opportunity to commit the offense, the state knew that. The law enforcement knew that. The day of the offense, he never hid. He never went there. If you look at Howard, look at these cases that all say exact type of similar evidence. Sure, there was evidence to suggest he could have been involved, but it's all severed. And there's not enough confidence. You should not have confidence in the verdict if you take the factual predicate that the jury never heard a word about bite marks. It's not that there was competing rationales and competing arguments. They just wouldn't have heard a word. And that, in our opinion, is absolutely the factual predicate you should take at this stage, at this stage. And we think that it should be remanded to consider the rest of those questions. We maintain that your confidence in this verdict should be significantly undermined and that the case should be reversed and remanded back to the circuit court. Justice Moore, any questions? No. No. Justice Wharton? No. Okay, thank you both for your arguments. The matter will be taken under advisement. We'll issue an order in due course. Thank you. Thank you very much. That concludes the proceedings of People v. Pronte.